UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALORY ZAJDEL and ADAM ZAJDEL,

        Plaintiffs,

v.

EXEL INC., and MATTHEW PAUL BOHLAND,

        Defendants.
_____/

Case No. 2:21-cv-12026

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT [14]**

Plaintiffs Malory Zajdel and her husband Adam Zajdel sued Defendants Exel Incorporated and Matthew Bohland for negligence and loss of consortium. ECF 1. After discovery closed, Defendants jointly moved for summary judgment. ECF 14. The parties briefed the motion. ECF 15; 16. The Court will grant the motion for the reasons below.[1]

## BACKGROUND

Plaintiff Malory Zajdel was driving a 2004 Buick LeSabre on Van Dyke Road in Warren, Michigan when she collided with a freight truck and trailer driven by Defendant Bohland, an employee of Defendant Exel. ECF 14-3, PgID 84–85; ECF 14-5, PgID 95. Zajdel crashed into the rear axle of the trailer as Bohland was turning

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

left out of a car dealership driveway. ECF 14-5, PgID 92, 94. At the time of the crash, Zajdel was driving forty-three miles per hour. ECF 15, PgID 146. The speed limit was thirty-five miles per hour. *Id.* at 147; ECF 14-5, PgID 92.

At the time of the accident, Bohland had been making deliveries to that car dealership five days per week since 2014. ECF 14, PgID 64; ECF 14-5, PgID 97. Bohland saw two vehicles in the oncoming traffic lanes before he pulled out of the driveway, but given his experience with the route, he believed he "had enough time to pull [out] of the driveway and did not observe any [vehicles] close to him." ECF 14-3, PgID 85. After the accident, Bohland's supervisor cited him for poor work performance and concluded that he did not allow enough space between himself and the approaching traffic. ECF 15-7, PgID 213.

Zajdel admitted she had looked down at her dashboard clock for two or three seconds before the collision. ECF 15-2, PgID 172. She first saw the truck and trailer when she looked up from her dashboard. *Id.* She claimed she had lifted her leg to attempt braking. ECF 15-12, PgID 249. Robert Tharpe, a witness to the accident who was driving a semi-tractor bobtail[2] next to Zajdel at the time of the crash, said that Zajdel "never hit the brakes." ECF 14-5, PgID 97; ECF 15, PgID 146.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to

---

[2] 'Bobtail' refers to a semi-truck with no trailer attached.

2

specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Defendants moved for summary judgment on the basis that no reasonable juror could find Bohland more at fault than Zajdel. ECF 14, PgID 67. Defendants contended that Zajdel was more than 50% at fault because she exceeded the speed limit, drove while distracted, and failed to take "any evasive action." *Id.* at 61, 67–70. Defendants also argued that Zajdel forfeited her right-of-way by speeding. *Id.* at 71–72. Viewing the evidence in the light most favorable to the non-moving party, Defendants have

met their burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

The Court will first detail Michigan's comparative negligence system. After, the Court will explain why Defendants' motion for summary judgment prevails.

I. Comparative Negligence

Michigan uses a system of comparative negligence. *Placek v. City of Sterling Heights*, 405 Mich. 638, 656–60 (1979) (abandoning contributory negligence and adopting comparative negligence). "Comparative negligence is an affirmative defense adopted to promulgate a fair system of apportionment of damages." *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 98 (1992) (cleaned up).

Under Michigan's comparative negligence statute, "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." Mich. Comp. Laws § 500.3135(2)(b). The statute instructs that "[t]he standards for determining the comparative negligence of a plaintiff are the same as those of a defendant—the jury must consider the nature of the conduct and its causal relationship to the damages—and the question is one for the jury unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Laier v. Kitchen*, 266 Mich. App. 482, 496 (2005).

Here, the parties' disagreement turns on causation. "In order to prove causation, [a] plaintiff must show both cause in fact and proximate cause. Cause in fact requires plaintiff to show that her injuries would not have occurred but for

4

defendants' negligent conduct." *Zdrojewski v. Murphy*, 254 Mich. App. 50, 63 (2002) (internal citation omitted). "On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v. Square D Co.*, 445 Mich. 153, 163 (1994) (citations omitted). Both cause in fact and proximate cause are generally reserved for a jury, "but if there is no issue of material fact, the question may be decided by the court." *Genna v. Jackson*, 286 Mich. App. 413, 418 (2009) (citation omitted).

II. Summary Judgment

Summary judgment is warranted here because no genuine issues of material fact exist about whether Bohland or Zajdel was more than 50% at fault in causing the accident. *See* Mich. Comp. Laws § 500.3135(2)(b).

In short, the evidence shows that Zajdel was more at fault in causing the accident. For one, Zajdel was driving forty-three miles per hour in a thirty-five miles per hour speed limit zone. ECF 15, PgID 146–47. She argued that her excessive speed was immaterial based on her expert Timothy Robbins's opinion that the speed limit should have been forty-five miles per hour. ECF 15-12, PgID 263. But expert opinions are not facts of the case. Fed. R. Evid. 702 (requiring expert opinions to be "based on sufficient facts or data"); *see also Sanford v. Russell*, 387 F. Supp. 3d 774, 780 (E.D. Mich. 2019) (stating that "an expert's opinion must be based on the actual facts of the case"). And Robbins cited only his own research as the basis for his opinion. ECF 15-12, PgID 263, 271–73. In particular, Robbins cited a speed study he conducted that

showed that the eighty-fifth percentile of drivers traveled at forty-six miles per hour. *Id.* at 263. The speed study did not contain a methodology summary or data about the conditions on the road at the time the study was conducted. *See id.* at 263, 271–73. It merely stated the speed study's unverified conclusions. Robbins also failed to comply with the parameters for establishing a speed limit under Michigan law, which requires both an engineering study and a safety study to approve a new speed limit. *See* Mich. Comp. Laws § 257.628(5). In sum, Robbins's speed study is unverified and unpersuasive, and Zajdel's reliance on it was misplaced.

Zajdel also failed to take any evasive action, which suggests she was driving while distracted. Indeed, she admitted to looking at her dashboard clock for "[two] to [three] seconds" before crashing into Bohland's truck and trailer. ECF 15-2, PgID 172. What is more, Bohland's truck and trailer was, according to Bohland's expert Sebastian van Hooten, a significant distance away from Zajdel's car at the time Bohland began pulling into the road. ECF 14-5, PgID 100 (noting that if Zajdel was driving forty-three miles per hour, "her Buick would have been at least 378 feet away when Mr. Bohland began moving forward"). Zajdel therefore did not need to brake hard; she needed only to brake enough to avoid colliding with Bohland. Yet Zajdel "never applied the brakes prior to impact." *Id.* at 99. Unlike *Webb v. City of Detroit*, No. 348510, 2020 WL 5495276, at *7 (Mich. Ct. App. Sept. 10, 2020), in which summary judgment was denied because multiple witnesses had differing opinions about the defendant's failure to take evasive action and it was unclear whether the defendant had seen the plaintiff's vehicle at night, there is only one witness here, the

accident happened in broad daylight, and Zajdel admitted to seeing the truck and trailer once she looked up from her dashboard. ECF 14-3, PgID 84; ECF 15-2, PgID 172; ECF 15-3, PgID 181. All told, Zajdel is more than 50% at fault because she was driving while distracted and failed to brake or take evasive action.

The size of Bohland's truck and trailer also suggests that Zajdel was driving while distracted. Indeed, the truck was "approximately 66 feet long and 12.5 feet high[] and traveling across her path" in broad daylight. ECF 14-3, PgID 84 (crash report); ECF 14-5, PgID 101 (expert findings). A vehicle of that size traveling in the daylight would be obvious to an oncoming driver. *See Fields v. Ashford*, No. 17-cv-11812, 2020 WL 1703876, at *4 (E.D. Mich. Apr. 8, 2020) (noting that there were "reasons to doubt [the plaintiff's] testimony that she did not see [the defendant's] 74,000-pound semi-truck merging into her lane of traffic on a flat stretch of highway in broad daylight").[3]

What is more, Robert Tharpe, who was driving next to Zajdel at the time of the collision, was able to stop in time to avoid a collision. ECF 15-3, PgID 181 ("I had plenty of time to stop and . . . I was shocked that she didn't stop."). Tharpe was driving a large truck in the lane next to Zajdel and keeping pace with her. *Id.* His truck was the only other vehicle in Zajdel's vicinity at the time of the collision. *Id.*

---

[3] In *Fields*, the plaintiff's vehicle crashed into the defendant's semi-truck after the defendant pulled into the plaintiff's lane of travel. *Fields*, 2020 WL 1703876, at *1. While the court ultimately denied summary judgment, it did so because "a jury could reasonably credit [the plaintiff's] testimony that there was a sudden emergency[] caused by [the defendant] that left her no time to avoid the crash." *Id.* at *3. Zajdel made no sudden emergency claim here, *see* ECF 1, PgID 1–8; ECF 15, PgID 156–64. *Fields* is thus distinguishable as to the ultimate finding of fault.

Tharpe testified that Zajdel "had plenty of time to stop" and "couldn't believe she did not even hit the brakes." *Id.* at 180. That Tharpe was able to stop in time to avoid a collision further suggests that Zajdel was driving while distracted and supports a finding that she is more than 50% at fault.

Bohland, on the other hand, was substantially less at fault than Zajdel. For one, his experience making the turn at issue suggests he was familiar with the time and space required to complete the turn. Bohland had been making the turn five days a week since 2014, totaling over 1,000 times. ECF 14, PgID 64; ECF 14-5, PgID 102. He therefore "would have been well aware of how his tractor-trailer accelerated and the time it would have taken to complete the turn." ECF 14-5, PgID 102. Bohland saw the two vehicles in the oncoming lane and, although he could not recall whether they were stationary or moving, he believed he "had plenty of space" to pull into the road. ECF 15-4, PgID 193.

To suggest that Bohland knew he did not have enough time to make the turn, Zajdel highlighted Bohland's post-accident statement that he should "[g]ive more time when entering" a busy road. ECF 15, PgID 149; ECF 15-6, PgID 204. But Bohland's statement was not an admission that he did not have enough time or space to make the turn. Rather, it was a response to a question about how he could "avoid this type of accident in the future." ECF 15-6, PgID 204.

Taken together, the evidence supports the finding that reasonable minds could not differ on whether Zajdel was more than 50% at fault for the accident. Mich. Comp.

8

Laws § 500.3135(2)(b). The Court will therefore grant Defendants' summary judgment motion and dismiss the case.[4]

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [14] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 7, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 7, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

---

[4] Because the Court has found that Zajdel was more than 50% at fault, the Court need not address whether Zajdel forfeited her right of way by speeding.

9